Brendan S. Cox (*Pro Hac Vice*)
Laredo, Smith & Kane, LLP
101 Federal Street, Suite 650
Boston, Ma 02110
Telephone: (617) 443-1100
Facsimile: (617) 443-1174
Cox@Laredosmith.Com

Bethany D. Bengfort (SBN 312507)
Turner Boyd Seraphine LLP
155 Bovet Road, Suite 600
San Mateo, Ca 94402
Telephone: (650) 521-5930
Bengfort@Turnerboyd.Com

*Attorneys For Defendant*
*Osaro, Inc.*

Timothy Chen Saulsbury (SBN 281434)
Tsaulsbury@Mofo.Com
Gene Novikov(SBN 257849)
gnovikov@mofo.com
Morrison & Foerster, LLP
425 Market St.
San Francisco, Ca 94105
Telephone: (415) 268-6074

*Attorney For Defendant*
*Parallel Domain, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| ARTIFICIAL INTELLIGENCE INDUSTRY ASSOCIATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> OSARO, INC., <br><br> Defendant. | Case No. 3:25-cv-07170-PHK <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINTS** <br><br> Date:   February 10th, 2026 <br> Time:   1:30 p.m. <br> Place:   Courtroom F, 15th Floor <br> Judge:  The Honorable Peter H. Kang |
| ARTIFICIAL INTELLIGENCE INDUSTRY ASSOCIATION, INC. <br><br> Plaintiff, <br><br> v. <br><br> PARALLEL DOMAIN, INC. <br><br> Defendant. | Case No. 3:25-cv-07658-PHK |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on February 10th at 1:30 p.m., or as soon as the matter may be heard, in the courtroom of the Honorable Peter H. Kang, located in the Phillip Burton Federal Building & United States Courthouse at 450 Golden Gate Avenue, San Francisco, California 94102, in Courtroom F, 15th Floor, Defendants OSARO, Inc. ("OSARO") and Parallel Domain, Inc. ("Parallel Domain (collectively, "Defendants") will and hereby do move this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the first amended complaint filed by Plaintiff Artificial Intelligence Industry Association, Inc. ("AIIA" or "Plaintiff") in each of the Defendants' respective actions:  for OSARO, the First Amended Complaint ("OSARO FAC") filed on October 27, 2025 (ECF No. 21, Case No. 3:25-cv-07170-PHK), and for Parallel Domain, the First Amended Complaint ("PD FAC") filed on December 4, 2025 (ECF No. 26, Case No. 3:25-cv-07658-PHK).  This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the proposed order, the pleadings and papers on file in this action, and all matters of which the Court may take judicial notice.

## STATEMENT OF THE RELIEF REQUESTED

Pursuant to Federal Rule of Civil Procedure 12(b)(6), each Defendant seeks an order from the Court dismissing its respective FAC in its entirety.  In particular, OSARO and Parallel Domain seek to dismiss: (1) Plaintiff's first claim for infringement of U.S. Patent No. 9,920,315; (2) Plaintiff's second claim for infringement of U.S. Patent No. 10,075,693; (3) Plaintiff's third claim for infringement of U.S. Patent No. 11,257,272; and (4) Plaintiff's fourth claim for a temporary injunction.

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ............................................................................................................... 1

II.   STATEMENT OF ISSUES TO BE DECIDED ................................................................. 1

III.  FACTUAL BACKGROUND ............................................................................................ 2

      A.   The Asserted Patents .............................................................................................. 2

           1.   The '272 Patent .......................................................................................... 2

           2.   The '693 Patent .......................................................................................... 2

           3.   The '315 Patent .......................................................................................... 3

      B.   The Accused Products ............................................................................................ 4

           1.   OSARO's SightWorks Technology .......................................................... 4

           2.   Parallel Domain's PD Replica Technology .............................................. 5

      C.   AIIA's FACs and Litigation History ..................................................................... 5

           1.   OSARO Procedural History ....................................................................... 5

           2.   Parallel Domain Procedural History .......................................................... 6

IV.   LEGAL STANDARD ....................................................................................................... 7

V.    ARGUMENT ..................................................................................................................... 8

      A.   Plaintiff Fails to State a Claim of Direct Infringement Against Any Defendant .......... 8

           1.   Plaintiff fails to plausibly plead direct infringement against OSARO
                because it simply paraphrases the claim language and does not
                provide any facts in support of its allegations .................................................. 8

           2.   Plaintiff fails to state a claim for direct infringement against Parallel
                Domain ........................................................................................................... 11

      B.   AIIA Fails to State a Claim for Indirect Infringement Against Any Defendant ......... 18

           1.   AIIA fails to state a claim for induced infringement because it fails to
                adequately plead specific intent ......................................................................... 19

           2.   AIIA fails to state a claim for contributory infringement because it
                fails to adequately plead no substantial non-infringing uses ......................... 21

C.    AIIA Fails to State a Claim for Willful Infringement Against Any Defendant.......... 22

D.    The Court Should Dismiss AIIA's Temporary Injunction Claim Because a Temporary Injunction is Not an Independent Cause of Action ................................. 23

VI.    CONCLUSION.................................................................................................................. 23

## **TABLE OF AUTHORITIES**

Page

**Cases**

*A.B. Concrete Coating Inc. v. Wells Fargo Bank, Nat'l Ass'n*,
491 F. Supp. 3d 727 (E.D. Cal. 2020) ........................................................................... 23

*Aftechmobile Inc. v. Salesforce.com, Inc.*,
No. 19-cv-05903-JST, 2020 WL 6129139 (N.D. Cal. Sep. 9, 2020) ............................ 18

*ALD Social, LLC v. Verkada, Inc.*,
654 F. Supp. 3d 972 (N.D. Cal. 2023) .......................................................................... 17

*AlexSam, Inc. v. Aetna, Inc.*,
119 F.4th 27 (Fed. Cir. 2024) ....................................................................................... 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ......................................................................................................... 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................... 7, 8, 14

*Bot M8 LLC v. Sony Corp. of Am.*,
4 F.4th 1342 (Fed. Cir. 2021) ...................................................................... 7, 8, 10, 14

*BSD Crown, LTD. v. Amazon.com, Inc.*,
684 F. Supp. 3d 993 (N.D. Cal. 2023) .......................................................................... 22

*Coop. Entm't, Inc. v. Kollective Tech., Inc.*,
No. 5:20-CV-07273-EJD, 2024 WL 420747 (N.D. Cal. Feb. 5, 2024) ................................... 14, 18

*Cyph, Inc. v. Zoom Video Commc'ns, Inc.*,
642 F. Supp. 3d 1034 (N.D. Cal. 2022) .................................................................. 10, 11

*Cyph, Inc. v. Zoom Video Commc'ns, Inc.*,
No. 22-CV-00561-JSW, 2022 WL 1556417 (N.D. Cal. May 17, 2022) ....................................... 10

*Dolby Lab'ys Licensing Corp. v. Roku, Inc.*,
No. 24-CV-04660-EJD, 2025 WL 2021803 (N.D. Cal. July 18, 2025) ................................... 21, 22

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
363 F.3d 1263 (Fed. Cir. 2004) .................................................................................... 18

*Estech Sys. IP, LLC v. Ooma, Inc.*,
770 F. Supp. 3d 1228 (N.D. Cal. 2025) ............................................................... 8, 10, 19

*Funai Elec. Co., Ltd. v. Daewoo Elec. Corp.*,
616 F.3d 1357 (Fed. Cir. 2010) ................................................................................... 23

*Golden v. Google LLC,*
No. 2024-2024, 2025 WL 1752485 (Fed. Cir. June 25, 2025) ................................................. 18, 19

*Golden v. Intel Corp.,*
No. 2023-1257, 2023 WL 3262948 (Fed. Cir. May 5, 2023) ..................................................... 13, 17

*Golden v. Qualcomm Inc.,*
No. 2023-1818, 2023 WL 6561044 (Fed. Cir. Oct. 10, 2023) ...................................................... 10

*Halo Elecs., Inc. v. Pulse Elecs., Inc.,*
579 U.S. 93 (2016) ...................................................................................................................... 22

*Hewlett Packard Enter. Co. v. Inspur Grp. Co.,*
No. 24-CV-02220-JST, 2025 WL 754265 (N.D. Cal. Mar. 10, 2025) ..................................... 19, 22

*House v. Gen. Elec. Co.,*
No. 2025-1294, 2025 WL 2972670 (Fed. Cir. Oct. 22, 2025) ...................................................... 12

*Huang v. Amazon.com, Inc.,*
No. 2024-1428, 2025 WL 314718 (Fed. Cir. Jan. 28, 2025) ......................................................... 18

*Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co.,*
285 F.3d 1046 (Fed. Cir. 2002) ................................................................................................... 18

*Kawasaki Jukogyo Kabushiki Kaisha v. Rorze Corp.,*
677 F. Supp. 3d 1079 (N.D. Cal. 2023) ....................................................................................... 21

*Metricolor LLC v. L'Oreal S.A.,*
791 Fed. App'x 183 (Fed. Cir. 2019) ..................................................................................... 14, 17

*MicroStrategy Inc. v. Bus. Objects, S.A.,*
429 F.3d 1344 (Fed. Cir. 2005) ................................................................................................... 14

*Nalco Co. v. Chem-Mod, LLC,*
883 F.3d 1337 (Fed. Cir. 2018) ..................................................................................................... 8

*P2i Ltd. v. Favored Tech USA Corp.,*
No. 23-CV-01690-AMO, 2024 WL 4294652 (N.D. Cal. Sept. 24, 2024) ................................... 20

*Ramos v. Chase Home Fin.,*
810 F. Supp. 2d 1125 (D. Haw. 2011) ......................................................................................... 23

*Riganian v. LiveRamp Holdings, Inc.,*
No. 25-CV-00824-JST, 2025 WL 2021802 (N.D. Cal. July 18, 2025) ........................................ 23

*Shamoon v. City of San Antonio,*
No. SA-18-CV-00718-XR, 2025 WL 1356399 (W.D. Tex. Apr. 30, 2025) ................................. 17

*Sonos, Inc. v. Google LLC,*
591 F. Supp. 3d 638 (N.D. Cal. 2022) ............................................................................... 18, 19, 21

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.*,
    208 F.3d 981 (Fed. Cir. 2000) ................................................................................. 15

*Warsaw Orthopedic, Inc. v. NuVasive, Inc.*,
    778 F.3d 1365 (Fed. Cir. 2015) ................................................................................. 6

**Rules**

L.R. 11-4(a)(4) .................................................................................................................. 14

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Defendants OSARO and Parallel Domain seek dismissal of Plaintiff AIIA's complaints against them in their entirety.[1] The operative complaints represent AIIA's second bite at the apple with respect to its accusations against each defendant. In the case of OSARO, the amended complaint follows a previous motion to dismiss; in the case of Parallel Domain, the FACs were filed after Defendants each sent a letter explaining in detail that the accused technology differs so fundamentally from what is described in the patents as to preclude any viable claim of infringement. Even on its second attempts, however, AIIA's allegations remain fatally deficient. The complaints at issue here fail to raise a plausible inference of direct infringement of any claim by any defendant, in some cases making fundamental errors that raise questions about AIIA's level of basic diligence in filing these lawsuits. And the FACs' attempts to plead indirect and willful infringement are conclusory and lack any factual basis.

Because AIIA fails to allege any facts that plausibly state a claim that OSARO or Parallel Domain infringes—directly, contributorily, via inducement, or otherwise—any claim of any asserted patent, the complaints should be dismissed.

## II. STATEMENT OF ISSUES TO BE DECIDED

Whether the Court should dismiss each defendant's respective FAC in its entirety because Plaintiff has not plausibly pleaded a sufficient legal or factual basis for infringement of U.S. Patent Nos. 11,257,272 (the "'272 Patent"), 10,075,693 (the "'693 Patent"), and 9,930,315 (the "'315 Patent") (together, the "Asserted Patents").

---

[1] Per the parties' status report, this joint motion was anticipated to also be brought on behalf of a third defendant, Ceres AI, in case no. 3:25-cv-07924-PHK. *See* ECF No. 32, Case No. 3:25-cv-07170-PHK; ECF No. 29, Case No. 3:25-cv-07658-PHK. However, on December 29, 2025, the day this brief was due, AIIA stipulated to dismissal of its claim against Ceres AI with prejudice. ECF No. 31, Case No. 3:25-cv-07924-PHK.

### III.    FACTUAL BACKGROUND

#### A.    The Asserted Patents

##### 1.    The '272 Patent

The '272 patent is directed to the creation of "synthetic" images that can be used in training data sets for machine learning. *See* OSARO FAC Ex. A ('272 patent) at Title ("Generating Synthetic Image Data for Machine Learning"); Abstract ("Synthetic image datasets generated by the systems and methods described herein are used to train machine learning systems"). The '272 patent explains that there are problems associated with the "conventional" approach of using "real" or "manually captured" images in training data sets, including that those images are "scarce" (even with "the amount of photographs available online"), and that those images may be difficult to acquire. *Id.* at 2:05-51, 3:47-60, 5:50-54, 7:40-42. The claimed invention thus provides a method of "creat[ing] training data sets comprising synthetic images generated using automated processes" that, according to the '272 patent, "is just as effective as manually captured images for training neural networks and other machine learning systems." *Id*. at 2:39-51.

AIIA asserts claim 1 and/or claim 17 of the '272 patent.[2] OSARO FAC ¶ 62; PD FAC ¶¶ 41, 49 & Ex. D. Both claims require, with some variations, constructing a "synthetic image scene" by "selecting a background image from the database" of background images. Claim 1 additionally requires selecting and arranging within the synthetic image scene a 3D model from an object database and a texture material from a library of texture materials. Claim 17 additionally requires specifying an "image class" for the scene in a metadata file and then constructing a "second synthetic scene" in the same class using instructions included in a second metadata file. Both claims then require adding the resulting synthetic images to a training dataset used for training a machine learning system.

##### 2.    The '693 Patent

The '693 patent is directed to "methods and systems of embedding calibration metadata into stereoscopic video files." *See* OSARO FAC Ex. B ('693 patent) at 1:17-20. The patent explains that stereoscopic video, or "3D film video," is a "digital motion picture that enhances the illusion of depth

---

[2] The PD FAC mentions claim 17 but makes no attempt to read it onto the PD accused product. PD FAC ¶ 41. The claim chart attached as Exhibit D asserts claim 1. PD FAC Ex. D.

perception" using a "stereoscopic camera" that "uses two fish-eye lenses to simultaneously capture video streams from two different perspectives." *Id*. at 3:59-61, 4:47-50; see also *id*. at 4:09-12, 1:24-25, 7:27-31. The patent further explains that in order for a "stereoscopic video player" to play stereoscopic video, "the player may require knowing the camera's image sensor and calibration parameters to properly render the stereoscopic frames." *Id*. at 1:41-49. Thus, the patent provides a "system or method that can embed the camera and sensor parameters into the video file captured by a stereoscopic 3D camera." *Id*. at 2:03-5.[3]

AIIA asserts claim 1 of the '693 patent. OSARO FAC ¶ 52; PD FAC ¶¶ 43, 53 & Ex. D. Claim 1 requires, among other things, (1) "a stereoscopic video feed of two or more stereoscopic images from a stereoscopic video capture device"; and (2) "embedding, in real-time as the stereoscopic video feed is recorded, the stereoscopic video feed with the plurality of contemporaneous metadata feeds, and wherein the plurality of metadata feeds comprises a calibration metadata of the stereoscopic video capture device contemporaneous with the stereoscopic video feed." Claim 1 thus requires recording video with a stereoscopic camera and real-time embedding of calibration metadata in the captured video feed.

### 3.    The '315 Patent

Similar to the '693 patent, the '315 patent is directed to "a stereoscopic device . . . that captures three-dimensional (3D) images and videos with a wide field of view and provides a virtual reality (VR) experience by immersing a user in a simulated environment using the captured 3D images or videos." *See* OSARO FAC Ex. C ('315 patent) at 1:60-65. The patent explains that the stereoscopic device "simultaneously records two videos from two different perspectives" and, "[i]n order to enhance the stereoscopic 3D effect, it is desirable to eliminate the optical distortion difference between the left and right channels of the 3D video." *Id*. at 2:39-40, 3:59-62. The claimed invention thus uses "3D calibration data" to "detect the distortion differences between the left and right channels" and play back the video "with a compensation based on the 3D calibration data." *Id*. at 3:59-4:02.

---

[3] Although the specification and AIIA refer to both "methods" and "systems" of this patent, all of the '693 Patent's twelve claims are system claims.

AIIA asserts (depending on defendant) claim 1 or claim 7 of the '315 patent. OSARO FAC ¶ 43; PD FAC ¶¶ 45, 58, 92 & Ex. D. Claim 1 requires, among other things: (1) "receiving the stereoscopic video sequence;" (2) "embedding calibration information in at least two ways into the stereoscopic video sequence," including "static calibration information [embedded] once per the stereoscopic video sequence" and "time-varying calibration information [embedded] once per frame of the stereoscopic video sequence, the time varying calibration information comprising inertial management data"; (3) combining multiple stereoscopic video sequences recorded by multiple devices"; and (4) "embedding calibration information from the multiple stereoscopic video sequences into each frame of a combined stereoscopic video sequence using a video steganography process." Claim 7 requires, among other things: (1) "receiving a stereoscopic 3D video sequence comprising an embedded calibration information"; (2) "processing video frames of the stereoscopic 3D video in a real time, when the stereoscopic 3D video sequence is being played back"; and (3) "generating a video stabilization operation based on a left channel and a right channel of the stereoscopic 3D video sequence."

## B.    The Accused Products[4]

### 1.    OSARO's SightWorks Technology

In the OSARO FAC, AIIA accuses OSARO's "SightWorks" technology of infringing the asserted claims. OSARO FAC ¶¶ 23, 25, 28, 31. OSARO is a premier San Francisco-based robotics company that, through its own proprietary and patent-protected technology, specializes in warehouse automation. *See id.* ¶ 23; *see also* Ex. 5 to the Declaration of Brendan Cox ("Cox Decl."). SightWorks is OSARO's proprietary software that permits robots to adapt to changing warehouse conditions while picking, kitting, and bagging. *Id.* SightWorks uses cameras and other sensors to manually collect individual images and other types of data from real-world packaging environments. Cox Decl. Ex. 5 at 2. SightWorks then uses that data to train its software to detect errors and adapt to changing conditions. *Id.* At no point does SightWorks create *synthetic* images or use any such images to train its software—every image SightWorks uses is a real image taken from cameras placed around

---

[4] Here and in the direct infringement section below, Defendants provide information concerning the functionality of the accused products for background context, but AIIA's complaint is insufficient regardless of whether this context is accepted as true at this stage of the case.

a physical packaging environment.  *Id.*  Nor does SightWorks ever record stereoscopic video from a stereoscopic camera (or, in fact, any video at all).  *Id.* at 3.

### 2.  Parallel Domain's PD Replica Technology

Parallel Domain's accused PD Replica software creates simulations of real-world environments—fully-realized virtual worlds that can be rendered in real-time and used, among other things, to train AI models for use in self-driving cars and other applications.  PD Replica works by ingesting a series of image captures of a real-world environment taken by physical cameras at different angles, and using a known, publicly-described technique called 3D Gaussian Splatting to turn the data from those images into a full volumetric three-dimensional model of the scene.  In that model, every element of the scene is represented as a set of 3D "blobs," each containing information about the content of the scene at that point.  This representation then allows the real-time rendering of a 3D simulation of the scene from the point of view of a moving virtual camera.  Parallel Domain does not, at any point, create synthetic images by selecting background images from a database and arranging them in the frame of a virtual camera; nor does it embed metadata into video or image files either during image capture or during rendering.

### C.  AIIA's FACs and Litigation History

AIIA is an apparent "non-practicing" entity focused on "patent protection services" that was incorporated in Florida on May 13, 2025.  Cox Decl., Exs. 1 and 2.  In July 2025, AIIA acquired the Asserted Patents.  Cox Decl., Ex. 3.  Since then, it has filed substantially similar complaints against at least five different companies that make very different products and employ different types of image data in vastly different ways.  Cox Decl., Ex. 4.  The complaints all follow the same general format: (1) pull generic descriptions of the target company's products off the company's website; (2) recite the patent claims or high-level descriptions of those claims; and (3) make entirely generic and conclusory allegations that the target company's products infringe the claims.  *See id.*

### 1.  OSARO Procedural History

AIIA filed its original complaint against OSARO on August 25, 2025.  ECF No. 1, Case No. 3:25-cv-07170-PHK.  AIIA's original complaint did not make any factual allegations—plausible or otherwise—as to how SightWorks infringed the Asserted Patents.  *Id.* ¶¶ 20-40.  Instead, the complaint

relied on generalized marketing descriptions from OSARO's website and asserted—"on information and belief"—that SightWorks practiced the asserted claims. *Id.* On October 13, 2025, OSARO filed a motion to dismiss the complaint. ECF No. 15, Case No. 3:25-cv-07170-PHK. On October 27, 2025, OSARO also sent a letter to AIIA explaining, in detail, why AIIA's claims were objectively baseless. Cox Decl. Ex. 5.

AIIA filed the OSARO FAC on October 27, 2025. ECF No. 21, Case No. 3:25-cv-07170-PHK. The primary difference between the OSARO FAC and the original complaint is that the OSARO FAC cites to a claim chart that recites each limitation of the asserted patents. *Id.* Ex. D. The claim chart does nothing to cure the deficiencies in the original complaint, however, because it merely repackages the non-specific and conclusory allegations from the original complaint and re-asserts them for each claim limitation. *See id.*

The OSARO FAC also asserts induced, contributory, and willful infringement, again reciting wholly generic and conclusory allegations that parrot the applicable legal standards. OSARO FAC ¶¶ 33-35; *see also id.* Ex. D. In addition, despite having only existed for a few months and having no plausible allegations that it makes products that practice the patents,[5] AIIA claims damages from lost profits in excess of $100,000,000 and "irreparable harm" in the form of "loss of competitive advantage." OSARO FAC ¶¶ 35-39. These allegations are again supported by nothing more than generic and conclusory paraphrases and partial quotations of patent claims, website summaries, and, in some circumstances, legal standards. *Id.*

### 2. Parallel Domain Procedural History

AIIA's original complaint against Parallel Domain was filed on September 9, 2025. ECF No. 1, Case No. 3:25-cv-07658-PHK. Despite containing an "infringement" section loaded with technical jargon, that Complaint lacked any attempt to match each of the limitations of any asserted patent claim to any Parallel Domain product or technology. *Id.,* ¶¶ 22-36. Like the complaints against OSARO, it also contained generic assertions of induced, contributory and willful infringement, and sought injunctive relief without basis. *Id.,* ¶¶ 39-41, 52, 63, 74.

---

[5] *See Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 778 F.3d 1365, 1376 (Fed. Cir. 2015) (explaining that "if the patentee is not selling a product, by definition there can be no lost profits").

On October 15, 2025, Parallel Domain sent AIIA a letter explaining in detail why Parallel Domain's software was fundamentally different than the technology described in the asserted patents, and why AIIA could have no valid claim of infringement against Parallel Domain. Declaration of Gene Novikov ("Novikov Decl."), Ex. A. The letter asked AIIA to withdraw its allegations so that the parties and the Court need not expend resources on a motion to dismiss. *Id.*

AIIA responded by filing the PD FAC on December 4, 2025. The PD FAC differs from its predecessor in two relevant respects. First, it expands the section concerning Parallel Domain's alleged infringement by adding subsections purporting to provide "numerous examples of direct infringement" of each asserted patent. PD FAC ¶¶ 61-101. This new material is almost surreally impenetrable and unilluminating, a 12-page barrage of technical descriptions, references, and quotations in which no sentence seems to flow logically from the one that precedes it. *Id.* It certainly does not comprehensibly "articulate why it is plausible that the accused product infringes the patent claim." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021).

The PD FAC's second major contribution is a new "Exhibit D" containing three claim charts. While less bewildering than the new content in the body of the PD FAC, Exhibit D is just as haphazard and no more successful in articulating a plausible theory of infringement of any of the three asserted patents. As discussed in more detail below, these charts ignore or altogether omit key claim limitations, contain allegations that refute rather than support an inference of infringement and, in one case, ***pertain to a different, unasserted patent*** that just happens to share the last three digits of its number with the patent in the Complaint.

Parallel Domain advised AIIA of these deficiencies on December 19. Novikov Decl., Ex. B. AIIA did not respond.

## IV.     LEGAL STANDARD

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Courts disregard "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. A plaintiff must "plead[ ] factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged," which requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556).

## V.   ARGUMENT

### A.   Plaintiff Fails to State a Claim of Direct Infringement Against Any Defendant

In patent cases, "a plaintiff cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the [patent] claim elements and merely concluding that the accused product has those elements." *Bot M8* , 4 F.4th at 1353.  Instead, "[t]here must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Id.* "A plaintiff is not required to plead infringement on an element-by-element basis." *Id.* at 1352 (citing *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018). However, "[t]o plead direct infringement, a plaintiff must recite 'some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim.'" *Estech Sys. IP, LLC v. Ooma, Inc.*, 770 F. Supp. 3d 1228, 1232 (N.D. Cal. 2025) (citing *Bot M8,* 4 F.4th at 1353).

### 1.   Plaintiff fails to plausibly plead direct infringement against OSARO because it simply paraphrases the claim language and does not provide any facts in support of its allegations

The OSARO FAC is a quintessential example of the type of complaint that this Court has repeatedly found fails to state a claim for patent infringement.  AIIA's direct infringement allegations do nothing more than provide generic descriptions of SightWorks—that the OSARO FAC itself admits were obtained from marketing materials on OSARO's website—and then generically concludes that SightWorks meets some (paraphrased) claim elements.  OSARO FAC ¶¶ 23-32.  The claim chart attached to the OSARO FAC likewise simply parrots the claim language and asserts that SightWorks performs the requisite functions, providing non-specific "examples" of how SightWorks might perform these functions without identifying—or plausibly alleging—where and with what technology SightWorks actually does so.  *See id.* Ex. D.  The reason that Plaintiff fails to identify any actual technology is clear: SightWorks does not use any of the claimed technology, meaning that Plaintiff has no plausible case for infringement.

For the '272 patent, for example, AIIA alleges that SightWorks performs the claim limitation "constructing, by a computer graphics engine, a first synthetic image scene having an image scene class specified in a first metadata file" because SightWorks "use[s] a graphics engine to construct a synthetic 3D scene of a given type ('image scene class') as dictated by a scene metadata file." *Id.* Ex. D at 112. AIIA further alleges that SightWorks might use, "for example, a warehouse backdrop for a 'warehouse scene class.'" *Id.* These allegations, however, merely restate the claim language and provide no explanation of exactly what SightWorks feature or functionality AIIA alleges meets the claim limitation. Put another way, AIIA does not identify what SightWorks feature or functionality it alleges is (1) the graphics engine; (2) the synthetic 3D scene; or (3) the scene metadata file. This is unsurprising, because SightWorks simply *does not* construct synthetic images (with the claimed technology or otherwise)—it uses real images obtained from cameras placed around a physical packaging environment. Plaintiff thus cannot (and has not) plausibly alleged that SightWorks meets this claim limitation.

As another example, AIIA alleges that SightWorks performs the claim element "placing, by an image projector, a virtual camera within the synthetic image scene" because "SightWorks next inserts a virtual camera into the synthetic scene, using the parameters from a camera settings file" that then "'captures' a view of the 3D scene (like a real camera taking a photo)." OSARO FAC Ex. D at 114. Nowhere does the FAC identify precisely *what* SightWorks feature or functionality it alleges is the purported "virtual camera" nor what SightWorks feature or functionality constitutes the "synthetic image scene." *See id.* Again, the reason is obvious—SightWorks does not use anything that can reasonably be considered a virtual camera or synthetic image scene. Plaintiff therefore cannot (and has not) plausibly allege that it does.

AIIA's allegations for the '693 and '315 patents are equally deficient. For the '693 patent, for example, AIIA alleges that SightWorks stores a "stereoscopic video feed (e.g. left/right camera video streams) from the robot's stereo camera device," meeting the claim's requirement of a "stereoscopic video capture device," but does not identify what "robot" it is talking about, much less what device used by the robot is the alleged "stereo camera device," or what it alleges is the "video feed" captured by that device. OSARO FAC Ex. D at 119. The reason that Plaintiff has not identified the

"stereoscopic video capture device" SightWorks purportedly uses is because SightWorks does not capture any video at all—much less stereoscopic video from a stereoscopic camera. Plaintiff has therefore failed to plead any plausible factual support that SightWorks meets this claim limitation.

Similarly, for the '315 patent, AIIA alleges that SightWorks meets the limitation of "generating a video stabilization operation based on a left channel and a right channel of the stereoscopic 3D video sequence" without ever identifying what SightWorks feature or functionality it alleges: (1) is the stereoscopic 3D video sequence; (2) constitutes the "left and right" channels of that sequence; or (3) performs the video stabilization operation. OSARO FAC Ex. D at 127. Again, SightWorks does not use stereoscopic video, so it is unsurprising that Plaintiff has failed to identify any. Instead, as with every other claim limitation, AIIA generically alleges that "the Accused Products," the "system," or "Osaro's robots" perform these functions.

These generic and conclusory allegations—which do nothing more than "parrot[] the claim language" and "conclud[e] that the accused product has those elements"—cannot state a claim for direct infringement of a patent. *Estech*, 770 F. Supp. 3d. at 1233 (quoting *Bot M8*, 4 F.4th at 1353); *see also Golden v. Qualcomm Inc.,* No. 2023-1818, 2023 WL 6561044, at *2 (Fed. Cir. Oct. 10, 2023) (affirming dismissal where the "complaint did not adequately explain *how* [the accused] products infringe the asserted patent claims); *Cyph, Inc. v. Zoom Video Commc'ns, Inc.,* No. 22-CV-00561-JSW, 2022 WL 1556417, at *3 (N.D. Cal. May 17, 2022) (dismissing complaint where the patentee "recite[d] the claim limitations verbatim, and states [Defendant's] products contain those limitations"). AIIA alleges—without pointing to any plausibly infringing factual support—that SightWorks or its "robots" performs each claim element. But non-specific allegations at such high levels of generality cannot meet the pleading standards because they entirely fail to state a plausible claim for infringement. As this Court has held, a patent plaintiff must, at a minimum, include "factual allegations to support a plausible claim of infringement beyond simply identifying the products and claiming they infringe." *Estech*, 770 F. Supp. 3d. at 1233.

The deficiencies in AIIA's complaint are further underscored by both the complexity of the technology and the absence of factual allegations supporting material elements of the claims. *See Cyph, Inc. v. Zoom Video Commc'ns, Inc.*, 642 F. Supp. 3d 1034, 1040 (N.D. Cal. 2022) (explaining

that the "level of detail" required for a patent infringement claim may depend on the "complexity of the technology" as well as the "materiality of any given element to practicing the asserted claims"). As explained in Section III(A), *supra*, the use of "synthetic images" (for the '272 patent) and "stereoscopic video" (for the '693 and '315 patents) are not just critical elements of the claims, they are the fundamental technology underlying the claimed inventions. AIIA has not made any plausible factual allegation that SightWorks uses *any* of this technology, much less uses this technology in the specific way the claims require. That is because—as OSARO has repeatedly explained to AIIA—it does not. *See* Cox Decl. Ex. 5. AIIA's claims should therefore be dismissed.

AIIA's infringement claims should also be dismissed without leave to amend. The OSARO FAC follows both a prior motion to dismiss and a detailed letter explaining why AIIA's claims are objectively baseless, but does nothing to cure the identified deficiencies. *See* Cox Decl. Ex. 5. There is nothing that suggests that granting AIIA leave to amend will result in anything other than forcing the parties and the Court to expend unnecessary resources litigating baseless claims. Accordingly, the OSARO FAC should be dismissed with prejudice. *See Cyph,* 642 F. Supp. 3d at 1040 (explaining that "if a plaintiff has previously amended a complaint, a court has 'broad' discretion to deny leave to amend").

### 2. Plaintiff fails to state a claim for direct infringement against Parallel Domain

#### a. The PD FAC does not adequately plead direct infringement of the '272 Patent

As Parallel Domain explained to AIIA in its October 15 and December 19 letters, there is a fundamental mismatch between the technology claimed in the '272 Patent, asserted in Count I of the PD FAC, and Parallel Domain's products. Novikov Decl., Exs. A and B. The '272 Patent pertains to constructing synthetic images by assembling together background images, graphical textures, and camera settings contained in a database or library. *Supra* at 1-2. Asserted claim 1 requires: (a) receiving databases and libraries containing these assets; (b) "selecting a background image from the database of background images and arranging [it] in a background portion of the synthetic image scene"; (c) selecting a 3D model from the database, arranging it in the scene, and covering it with a

texture material selected from the relevant library; and (d) capturing and rendering the resulting image with a virtual camera and appending it to a training dataset.[6] PD FAC Ex. A ('272 Patent) at Claim 1.

As Parallel Domain has repeatedly advised AIIA (Novikov Decl., Exs. A and B), its accused technology cannot plausibly be alleged to do this because it does not create its simulations by pulling background images from a database and arranging them behind objects covered in textures selected from a library. Instead, it analyzes source images ahead of time to create a 3D model of a scene in which every element of the scene is represented as a set of 3D points, each containing information about the content of the scene at that point. This representation then allows the real-time rendering of a 3D simulation of the scene from the point of view of a moving virtual camera. The simulation is not constructed by pulling background images from a database and arranging them in the frame, as the '272 Patent requires; it is instead rendered from a comprehensive mathematical model of the scene constructed ahead of time.

It therefore makes sense that neither the body of the PD FAC nor the attached claim chart can coherently explain how Parallel Domain can be said to infringe the '272 Patent's claims. The section of the PD FAC entitled "Numerous Examples of Direct Infringement of the '272 Patent" is a disjointed series of purported descriptions of Parallel Domain's technology that makes no attempt to relate those descriptions to any claim limitations. PD FAC ¶¶ 61-77; *see House v. Gen. Elec. Co.,* No. 2025-1294, 2025 WL 2972670, at \*2 (Fed. Cir. Oct. 22, 2025) (insufficient at the pleadings stage to identify *"*general features of the [accused technology] as well as general press statements, without an adequate, non-conclusory explanation of how these features and press statements related to alleged infringement"). Indeed, to the extent that one can make sense of this material, it only confirms that, among other things, Parallel Domain does not "select[] a background image from [a] database of background images and arrang[e it] in a background portion of the synthetic image scene" to create its simulations. *See, e.g.,* PD FAC ¶ 63 ("[Parallel Domain's] PD Replica technology automatically ***reconstructs simulation environments from image and video input***, generating environments 'nearly indistinguishable from the detail of the real world' through a proprietary processing stack that

---

[6] The PD FAC also appears to assert claim 17, though Exhibit D does not include a claim chart. PD FAC ¶ 41 & Ex. D. Because claim 17 includes all of the substantive requirements of claim 1 discussed here (as well as additional requirements), this section does not address claim 17 separately.

reconstructs highly detailed environments with semantic segmentation, ground meshes, depth maps, and environment maps" (emphasis added)--in other words, Parallel Domain ingests image input, processes it, and "reconstructs" the environment as a 3D model that can then be rendered in a simulation).

The claim chart for the '272 Patent in Exhibit D is similarly deficient. In attempting to read the "selecting a background image from the database and arranging [it] in a background portion of the synthetic image scene" limitation onto Parallel Domain's accused technology, the chart effectively confirms that the accused technology does no such thing. The corresponding allegation in the chart does not state that Parallel Domain selects a background image from a database and arranges it in the scene; it instead claims that the software "generates digital twins from real capture data, *creating background environments* 'nearly indistinguishable from the detail of the real world.'" Likewise, for the limitation "covering the 3D model [of an object in the scene] with a texture material selected from the library of texture materials," the claim chart states that "3D models are textured with materials from the library providing 'technically infinite permutations through runtime color assignment and accessory variations.'" Despite AIIA's chart (but not any Parallel Domain material) containing the word "library," what the quoted text describes is on its face *not* selecting a texture material from a library.

Notably, the intrinsic record makes clear that these limitations are core to the claimed invention, distinguishing the invention over "[c]onventional methods of aggregating image datasets rely on manual steps performed by a photographer." PD FAC Ex. A ('272 Patent) at 4:23-24. "By providing routines for selecting scene elements from a library of background images, foreground objects, and texture," the specification says, "the systems and methods of generating synthetic image data described herein remove the time and location constraints of manual scene construction." *Id.* at 4:35-40. They therefore may not simply be glossed over or omitted. *Golden v. Intel Corp.*, No. 2023-1257, 2023 WL 3262948, at *2 (Fed. Cir. May 5, 2023) (affirming dismissal where claim charts in complaint "omit key language from the identified claims that would be essential for proving infringement").

The limitations of a claim precisely define, or limit, the scope of a claimed invention; if even one claim element is missing from an accused product, there is no literal infringement. *MicroStrategy Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1352 (Fed. Cir. 2005). While a plaintiff need not plead infringement limitation-by-limitation, it does need to allege sufficient factual conduct to make it plausible, rather than merely possible, that the claim as a whole is infringed. *Bot M8*, 4 F. 4th at 1352-53. AIIA's allegations concerning the '272 Patent do not meet that standard because they do not, on their face, make out a plausible case of infringement; to the contrary, they make clear that Parallel Domain's technology does not meet key limitations of the asserted claims. *See, e.g., id.* at 1354 ("Under *Iqbal/Twombly*, allegations that are 'merely consistent with' infringement are insufficient. . . . Where, as here, the factual allegations are actually *inconsistent* with and contradict infringement, they are likewise insufficient to state a plausible claim."); *Metricolor LLC v. L'Oreal S.A.*, 791 Fed. App'x 183, 188 (Fed. Cir. 2019) (affirming dismissal where plaintiff did not adequately plead that the accused product met a key limitation, and indeed the complaint contained material "plainly contradicting" the plaintiff's allegation of infringement); *Coop. Entm't, Inc. v. Kollective Tech., Inc.*, No. 5:20-CV-07273-EJD, 2024 WL 420747, at *5 (N.D. Cal. Feb. 5, 2024) (dismissing complaint that "pled away from its theory that the Accused Product infringes" the asserted claims).

The Court should dismiss Count I of the PD FAC.

### b.     The PD FAC does not adequately plead direct infringement of the '693 Patent

Count II of the PD FAC fares even worse than Count I. Indeed, AIIA's pleading with respect to "the '693 Patent" displays a level of shoddiness and inattention that does not meet this Court's standard of care in bringing claims. L.R. 11-4(a)(4) (attorneys before this Court must "[p]ractice with the honesty, care, and decorum required for the fair and efficient administration of justice"). AIIA did not respond to PD's December 19 letter pointing out the striking errors in the PD FAC with respect to the '693 Patent. Novikov Decl., Ex. B, at 5-6.

In Count II, AIIA pleads "Patent Infringement of U.S. Patent No. 10,075,693," and attaches that patent as Exhibit B. PD FAC at 28, Ex. B. The PD FAC also notes this patent's correct title, "Embedding Calibration Metadata into Stereoscopic Video Files." *Id.* ¶ 42. However, the claim chart

attached as Exhibit D to the PD FAC contains allegations pertaining to U.S. Patent No. 10,*979*,693, entitled "Stereoscopic 3D camera for virtual reality experience," purporting to read a claim from that entirely different patent onto Parallel Domain's technology.  PD FAC Ex. D at 6-8 (last three pages); Novikov Decl., Ex. C (U.S. Patent No. 10,979,693).  And while it is once again impossible to make heads or tails of the patent-specific allegations in the body of the PD FAC (¶¶78-90), the mentions of reference frames and matrix transformations—concepts that appear in the claims of U.S. Patent No. 10,*979*,693 but not 10,*075*,693—suggest that this material was likely also intended to pertain to the other, entirely different "'693 Patent."  That other patent is neither identified in any paragraph of the PD FAC nor attached to it.

In other words, AIIA brought a claim of infringement of one patent numbered with the last three digits "693," but through an apparent lack of diligence erroneously attached a claim chart and attempted to provide supporting allegations pertaining to an entirely different patent with those same last three digits in its number.  A patent infringement lawsuit is serious business, immediately imposing significant legal fees and other costs on its subject; the standards of professional responsibility surely require a plaintiff bringing one to understand and pay attention to which patents it is asserting.  *See View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986-87 (Fed. Cir. 2000) (because "[a] patent suit can be an expensive proposition," Rule 11 imposes the obligation of a "reasonable inquiry," and requires a patent plaintiff to be able to demonstrate to the Court and the alleged infringer "exactly why it believed before filing the claim that it had a reasonable chance of proving infringement"—presumably of the patent it asserted).

Because the PD FAC contains *no* factual allegations substantiating AIIA's claim of infringement of the '693 Patent asserted in Count II,[7] that Count should be dismissed.

### c.      The PD FAC Does Not Adequately Plead Direct Infringement of the '315 Patent.

The technology described in the '315 Patent endeavors to correct distortions resulting from combining the two different video channels in a stereoscopic video recording device of the sort used

---

[7] Because the PD FAC does not assert a count of infringement of U.S. Patent No. 10,979,693, Parallel Domain does not address here the allegations pertaining to that patent referenced in Exhibit D, though even a cursory glance at its last three pages demonstrates that that those allegations are at best conclusory, parroting the claim requirements with no factual basis.

to capture 3D images.  *Supra* at 3-4.  In order to do this, asserted claim 1  requires embedding certain calibration information into the video feed, both in real-time as the feed from each individual channel is being recorded, and into the resulting combined stereoscopic video sequence.  Among other things, the claim requires "embedding a time varying calibration information once per frame of the stereoscopic video sequence, the time varying calibration information comprising ***inertial measurement data***"—i.e., data from "an inertial measurement unit . . . for detecting orientation and/or motion of the [recording] device," such as an accelerometer.  PD FAC Ex. C ('315 Patent) at 2:29-34, 6:29-31.   It also requires "extracting calibration information from multiple stereoscopic video sequences into each frame of a combined stereoscopic video sequence using a ***video steganography process***," *id.* at claim 1, which is a process by which "metadata can be encoded into one or more frames of the 3D video file." *Id.* at 4:14-17.

After the filing of the initial complaint, Parallel Domain informed AIIA that its technology unequivocally did neither of these things.  The camera rigs Parallel Domain uses to capture the input images simply do not contain—and never have contained—an accelerometer or any similar unit to capture the motion of the device.  And any metadata captured by Parallel Domain's camera equipment is maintained in separate metadata text files, not by embedding it into image or video files via steganography.  Novikov Decl., Ex. A at 5-6.

AIIA's attempt to evade this reality in the PD FAC is transparent and the Court should reject it.  First, AIIA ***omits altogether*** the requirement that the claimed system embed "inertial measurement data" into each frame of the stereoscopic video sequence.  The intrinsic record makes clear that this "inertial management data" is key to being able to glean the orientation and motion of the recording device and thereafter calibrate the orientation of the captured stereoscopic video during playback.  PD FAC Ex. C ('315 Patent) at 2:29-34; 2:62-67; 7:1-13; 8:1-7. The claim chart in Exhibit D paraphrases the specific language of the claim to read simply "embedding a time varying calibration information once per frame," and its corresponding allegations mention only the parameters of the virtual camera in Parallel Domain's 3D simulation, with no mention of any inertial management data captured from

the recording device.[8] PD FAC Ex. D at 4. The wholesale omission of claim requirements from the PD FAC renders it deficient. *Golden*, 2023 WL 3262948, at *2 (affirming dismissal where the claim charts in the plaintiff's complaint "omit key language from the identified claims that would be essential for proving infringement").

Second, Exhibit D asserts that "calibration data is embedded directly into the data stream *using techniques equivalent to steganography* for seamless metadata presentation." PD FAC Ex. D at 5. Notably, the PD FAC does not state what these supposedly equivalent "techniques" are. Even assuming that this is meant to assert infringement via the doctrine of equivalents, boilerplate allegations of equivalence without any factual allegations to support an equivalence theory are legally insufficient. *Shamoon v. City of San Antonio*, No. SA-18-CV-00718-XR, 2025 WL 1356399, at *5 (W.D. Tex. Apr. 30, 2025). For an allegation of infringement under the doctrine of equivalents to survive a motion to dismiss, the plaintiff must plead some factual support, or otherwise render the allegation plausible in view of the totality of its complaint. *ALD Social, LLC v. Verkada, Inc.*, 654 F. Supp. 3d 972, 980-81 (N.D. Cal. 2023). AIIA does neither—it neither identifies the "techniques" it is accusing, nor explains how they are supposed to be equivalent to what is claimed.[9]

Because AIIA Count III does not plead that two key, specific claim limitations of the asserted '315 Patent claim are met, it has failed to raise a plausible inference of infringement and should be dismissed. *See Metricolor*, 791 Fed. App'x at 188 (failure to identify the presence of a specific claim requirement in the accused product meant failure to adequately plead patent infringement);

---

[8] The claims and specification are clear that the inertial management data must relate to the physical recording device capturing images in the real world, not the virtual camera used in rendering the output of a simulation. The claim requires "embedding calibration information into the stereoscopic video sequence in a real time *as the sequences of stereoscopic images are being recorded*." Apart from the explicit reference to recording images, the use of the term "stereoscopic" only makes sense in the context of a physical camera recording two channels of video to later be combined to create a 3D effect. *See* PD FAC Ex. C ('315 Patent) at 1:60-2:51 & Figs. 5-7. The references to the inertial measurement data in the specification further confirm that it pertains to the physical device recording images—which makes sense given that the point of the patent is to resolve possible distortion from the differences between two video channels being recorded simultaneously. *Id.* at 2:27-34, 4:3-14, 8:47-53.

[9] As with the other two patents, the additional text added to the body of the PD FAC is also unhelpful here, and in any event says nothing about either inertial measurement data or steganography. PD FAC ¶¶ 91-101.

*Aftechmobile Inc. v. Salesforce.com, Inc.*, No. 19-cv-05903-JST, 2020 WL 6129139, at \*10 (N.D. Cal. Sep. 9, 2020) (conclusory allegation that accused product meets key claim limitation with no factual support failed to raise plausible inference of infringement required to survive a Rule 12 motion).

   **d.  The Court should dismiss the infringement claims against Parallel Domain with prejudice.**

  Prior to bringing this motion, Parallel Domain sent AIIA two letters explaining, in detail, the fatal deficiencies in its infringement claims.  Novikov Decl., Exs. A and B.  Following the first letter, AIIA has already taken one opportunity to attempt to cure those deficiencies, but its second attempt to state a claim fared no better than its first, only introducing embarrassing errors like omitting any allegations with respect to infringement of one of the three asserted patents and instead providing a claim chart pertaining to an unasserted, unrelated patent.  There is no reason to believe a third bite at the apple will yield a better outcome.  Where, as here, the plaintiff has been put on notice of the deficiencies in its case and has attempted but failed to file a better-pleaded complaint, dismissal without further leave to amend is warranted.  *Huang v. Amazon.com, Inc.*, No. 2024-1428, 2025 WL 314718, at \*3 (Fed. Cir. Jan. 28, 2025) (affirming denial of leave to file a subsequent amended complaint where the plaintiff "had consistently refused to fix certain defects in his pleadings, despite having notice of these issues"); *Coop. Entm't,*, 2024 WL 420747, at \*5 (denying leave to amend after plaintiff squandered a prior opportunity to fix the issues with its pleading identified by the Court).

  **B.  AIIA Fails to State a Claim for Indirect Infringement Against Any Defendant.**

  In addition to direct infringement, a party may be held liable for two different forms of "indirect infringement—induced and contributory infringement."  *Sonos, Inc. v. Google LLC,* 591 F. Supp. 3d 638, 647 (N.D. Cal. 2022).  If the plaintiff "fail[s][ to adequately plead direct infringement" by any party, then the "complaint also fails to sufficiently plead indirect infringement." *Golden v. Google LLC*, No. 2024-2024, 2025 WL 1752485, at \*3 (Fed. Cir. June 25, 2025) (first citing *Dynacore Holdings Corp. v. U.S. Philips Corp*., 363 F.3d 1263, 1272 (Fed. Cir. 2004), then citing *Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co*., 285 F.3d 1046, 1055 (Fed. Cir. 2002).  Both induced and contributory infringement also require that the plaintiff plead facts plausibly showing that the accused

infringer knew of the patents and the infringement.  *Sonos*, 591 F. Supp. 3d at 647; *see also AlexSam, Inc. v. Aetna, Inc.,* 119 F.4th 27, 46-47 (Fed. Cir. 2024).

Both forms of indirect infringement also entail separate pleading requirements.  *Id.* To state a claim for induced infringement, the plaintiff must plausibly allege that the accused infringer had "specific intent to encourage infringement of the patent."  *Sonos*, 591 F. Supp. 3d at 647; *see also AlexSam,* 119 F.4th at 46-47.  To state a claim for contributory infringement, "the patentee must further adequately allege that the accused product is not a staple article or commodity of commerce suitable for a substantial noninfringing use."  *Sonos*, 591 F. Supp. 3d at 647.

Because AIIA has failed to adequately plead ***direct*** infringement against any defendant, its indirect infringement claims necessarily fail.  *See Golden*, 2025 WL 1752485, at *3 ("Because [plaintiff] has failed to adequately plead direct infringement by [defendant], his complaint also fails to sufficiently plead indirect infringement and willful infringement."); *Estech*, 770 F. Supp. 3d. at 1234 ("Having failed to allege any plausible claim for direct infringement of the Asserted Patents, Estech's indirect and willful infringement claims also fail.").  While that is alone sufficient for dismissal, AIIA's indirect infringement claims also fail for the additional reasons discussed below.

1.    **AIIA fails to state a claim for induced infringement because it fails to adequately plead specific intent**

AIIA's induced and willful infringement claims must be dismissed because AIIA has failed to plead sufficient facts to create an inference of specific intent.  To state a claim for induced infringement, a plaintiff must plead facts plausibly showing that the accused infringer had knowledge of infringement and specifically intended for that infringement to occur.  *See, e.g., Hewlett Packard Enter. Co. v. Inspur Grp. Co.*, No. 24-CV-02220-JST, 2025 WL 754265, at *25-*27 (N.D. Cal. Mar. 10, 2025), *Sonos*, 591 F. Supp. 3d at 647.  This Court has consistently found that, where an allegation of specific intent is premised on a demand letter—as AIIA's allegation appears to be here (*see, e.g.,* OSARO FAC ¶¶ 6, 26, 34, 42, 51, 61; PD FAC ¶¶ 14, 115, 127, 138)—the letter must communicate a specific charge of infringement based on a specific accused product.  *See id.*; *see also P2i Ltd. v. Favored Tech USA Corp.*, No. 23-CV-01690-AMO, 2024 WL 4294652, at *7 (N.D. Cal. Sept. 24,

2024) (dismissing induced and willful infringement claims where the cited demand letter "does not analyze the patents or apply them to any product or method").

AIIA's only allegation relevant to knowledge of infringement is that, prior to filing the complaint, it supposedly sent each defendant "a formal demand letter identifying the [Asserted Patents/'693 Patent] and asserting that Defendant's software [P]roducts infringe one or more of its claims." OSARO FAC ¶ 6, PD FAC ¶ 14. AIIA does not identify when the letter was sent, where the letter was sent,[10] what products were identified, whether there were other patents included in the letter, whether there was any analysis of infringement performed, or what specific language was used to communicate its charge of infringement. *See id.* Nor does AIIA attach the supposed letters to its pleadings, as is common practice for patent infringement complaints. *See, e.g.*, *P2i*, 2024 WL 4294652, at *7. Without any such allegations, it cannot state a claim for either induced or willful infringement and its claims must be dismissed.

AIIA also claims, for OSARO and Parallel Domain, that these defendants had knowledge of the Asserted Patents because they participated "in imaging technology forums and review of competitor offerings." OSARO FAC ¶ 38; PD FAC ¶ 111. AIIA does not explain how participation in "imaging technology forums" and "review of competitor offerings" would give the defendants knowledge of the Asserted Patents—it does not claim, for example, that any defendant was present at an "imaging technology forum" where the patents were discussed, or that there was a particular "competitor offering" reviewed by any defendant that contained references to the Asserted Patents. *See id*. Such vague and conclusory allegations are insufficient to plausibly allege knowledge of the patents. *See P2i*, 2024 WL 4294652, at *7. And, frankly, even if they were sufficient, it wouldn't matter, because "knowledge of the patents alone is not enough to plead the specific intent" necessary for induced and willful infringement. *Id.* at *8.

---

[10] The OSARO FAC itself raises the issue of whether any purported "demand letter" was properly served on, or in fact received by, OSARO. *See, e.g.,* FAC ¶¶ 9; 12 (alleging OSARO's principal address as "1045 Bryant St." in San Francisco—an address with which OSARO is not, and has never been, associated); *see also* ECF No. 15-6, Case No. 3:25-cv-07170-PHK. Notably, OSARO raised this issue in its initial motion to dismiss, and AIIA did not correct it in the FAC.

The only other allegation that AIIA makes regarding specific intent, for OSARO and Parallel Domain, is that the defendants supposedly provided "product documentation," "promotional materials," and "technical specifications" encouraging use of its software. OSARO FAC ¶ 37 & Exhibit D; PD FAC ¶ 105.  For both Defendants, AIIA does not elaborate whatsoever on any of this alleged "documentation," "materials," "specifications," "tutorials," or "support services."  AIIA does not explain what they said, to whom they were provided, or how they instructed users to perform each (or any) step of the asserted claims. Courts in this district regularly reject inducement claims based on such vague allegations.  *See Dolby Lab'ys Licensing Corp. v. Roku, Inc.*, No. 24-CV-04660-EJD, 2025 WL 2021803, at *10 (N.D. Cal. July 18, 2025)  (noting that "courts in this District have held that 'passing references to user manuals, guides, and support articles, without ever saying what those materials contain[], [are] wholly inadequate for an inference of specific intent'"). The absence of any plausible, non-conclusory factual allegations showing both knowledge and specific intent thus compels dismissal of AIIA's inducement and willful infringement claims.

### 2.    AIIA fails to state a claim for contributory infringement because it fails to adequately plead no substantial non-infringing uses

AIIA also fails to meet the pleading requirements for contributory infringement for the additional reason that it fails to plausibly allege that the accused products lack any substantial non-infringing use.  To state a claim for contributory infringement, the patentee must plausibly allege, among other things, that the accused products cannot reasonably "be used for purposes *other than* infringement." *Sonos*, 591 F. Supp. 3d at 648; *see also Kawasaki Jukogyo Kabushiki Kaisha v. Rorze Corp.*, 677 F. Supp. 3d 1079, 1088 (N.D. Cal. 2023).  Allegations that state, without more, that "the accused products . . . cannot be used for purposes other than infringement" are "conclusory" and cannot support a claim of contributory infringement.  *Sonos*, 591 F. Supp. 3d at 648.

For both defendants, AIIA asserts, without elaboration or any well-pleaded, plausible factual basis, that the defendants "contribute[]to infringement . . . by providing modules within the Products that are specifically designed for the infringing method with no substantial non-infringing use." OSARO FAC ¶ 44; & Ex. D; PD FAC ¶ 117.  Nowhere in any of the complaints or attached claim charts does AIIA identify what specific "module" from defendants' product offerings has no

substantial non-infringing use, much less a factual basis to support this allegation. *See id.* At most, for OSARO only, AIIA alleges that an ambiguous feature—e.g., a "camera-controlled feature"—is "custom-built for the patented process." OSARO FAC Ex. D at 116. But AIIA does not connect its vague description of the patented "feature" with any particular module within OSARO's SightWorks software, nor does it provide any support for its conclusory allegation that this non-specific feature was "custom-built" for the patented process. Such allegations are insufficient to state a claim for contributory infringement and must be dismissed.

### C.     AIIA Fails to State a Claim for Willful Infringement Against Any Defendant.

While the Patent Act permits courts in some circumstances to award treble damages for willful patent infringement, such a remedy is "generally reserved for egregious cases of culpable behavior." *Dolby Lab'ys*, 2025 WL 2021803, at *11 (quoting *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 104 (2016). "No binding appellate decisions discuss the pleading requirements for a willful infringement claim." *Hewlett Packard*, 2025 WL 754265, at *25 (quoting *BSD Crown, LTD. v. Amazon.com, Inc.*, 684 F. Supp. 3d 993, 999 (N.D. Cal. 2023). "In applying the Federal Circuit's rules for proving willful infringement, courts in this district have held that, to survive a motion to dismiss, a plaintiff must plausibly plead that the defendant had pre-suit knowledge of the patent-in-suit and that the defendant infringed it deliberately or intentionally." *Id.* "To plead deliberate or intentional infringement, plaintiffs may plead knowledge of infringement, which they can do by pleading that the accused infringer had a specific intent to infringe at the time of the challenged conduct." *Id.*

As with indirect infringement, Plaintiff's willful infringement claim falls because there are no viable direct infringement allegations. But it must also be dismissed for the additional reason that, as discussed with respect to the specific intent element of induced infringement, *supra* at 19-21, AIIA has not plausibly pled either knowledge of infringement or the specific intent to infringe, by any defendant. *P2I Ltd.*, 2024 WL 4294652, at *9 (holding that plaintiff's failure to plead the specific intent element of induced infringement meant that its willful infringement allegations were deficient too). AIIA's bare allegation against all Defendants that a "formal demand letter" was sent, with no further facts to establish that the demand letter read claims from the asserted patents onto accused products sufficient to communicate a specific charge of infringement, is insufficient to sustain a claim

for willful infringement. *Funai Elec. Co., Ltd. v. Daewoo Elec. Corp.*, 616 F.3d 1357, 1373 (Fed. Cir. 2010) (in order to serve as notice of infringement for willfulness purposes, a pre-suit letter "must communicate a charge of infringement of specific patents by a specific group or group of products"). AIIA's scattershot additional allegations against OSARO and Parallel Domain concerning their supposed competitor reviews and presence at unspecified technology forumslikewise do not amount to a plausible allegation that either defendant knew of the accused patents—much less that they infringed while knowing that they were infringing.

**D.    The Court Should Dismiss AIIA's Temporary Injunction Claim Because a Temporary Injunction is Not an Independent Cause of Action**

Separate and apart from its claims for patent infringement, AIIA appears to assert a separate cause of action for a "temporary injunction" against each defendant. OSARO FAC ¶¶ 70-73; PD FAC ¶¶ 147-154. An injunction, however, is "a remedy and not a standalone cause of action." *Riganian v. LiveRamp Holdings, Inc.*, No. 25-CV-00824-JST, 2025 WL 2021802, at *13 (N.D. Cal. July 18, 2025); *see also A.B. Concrete Coating Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 491 F. Supp. 3d 727, 737 (E.D. Cal. 2020) (explaining that "injunctive relief is not an independent cause[] of action"); *Ramos v. Chase Home Fin.*, 810 F. Supp. 2d 1125, 1132 (D. Haw. 2011) ("The court follows the well-settled rule that a claim for "injunctive relief" standing alone is not a cause of action."). To the extent that AIIA purports to bring separate causes of action for a temporary injunction, they must be dismissed.

## VI.    CONCLUSION

For the reasons set forth above, Plaintiff fails to state a viable claim for patent infringement against any of the Defendants. Accordingly, Defendants respectfully request that this Motion be GRANTED and that the First Amended Complaint in each action be dismissed.

Dated: December 29, 2025               Respectfully submitted,

                                       /s/ Gene Novikov

                                       BRENDAN S. COX (*pro hac vice*)
                                       LAREDO, SMITH & KANE, LLP
                                       101 Federal Street, Suite 650
                                       Boston, MA 02110
                                       Telephone: (617) 443-1100
                                       Facsimile: (617) 443-1174
                                       cox@laredosmith.com

                                       BETHANY D. BENGFORT (State Bar No. 312507)
                                       TURNER BOYD SERAPHINE LLP
                                       155 Bovet Road, Suite 600
                                       San Mateo, CA 94402
                                       Telephone: (650) 521-5930
                                       bengfort@turnerboyd.com

                                       *Attorneys for Defendant*
                                       *OSARO, Inc.*

                                       Timothy Chen Saulsbury (SBN 281434)
                                       Tsaulsbury@Mofo.Com
                                       Gene Novikov(SBN 257849)
                                       gnovikov@mofo.com
                                       Morrison & Foerster, LLP
                                       425 Market St.
                                       San Francisco, Ca 94105
                                       Telephone: (415) 268-6074

                                       *ATTORNEY FOR DEFENDANT*
                                       *PARALLEL DOMAIN, INC*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on December 29, 2025, I caused a true and correct copy of the foregoing to be filed in this Court's CM/ECF system, which will send notification of such filing to all parties who have appeared in this matter.

Executed on this December 29, 2025.

/s/ Gene Novikov
Gene Novikov

CERTIFICATE OF SERVICE

CASE NOS. 3:25-CV-07170-PHK;
3:25-CV-07658-PHK; 3:25-CV-07924-PHK